UNITED STATES DISTRICT COURT
THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| WAYNE P. WYMAN, ) | United States District Court |
| ) | |
| Plaintiff, ) | Civil Action No. 1:12-cv-11560 |
| ) | |
| v. ) | |
| ) | |
| APRILE'S EUROPEAN RESTAURANT, LLC ) | |
| ) | |
| Defendant. ) | |

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT'S
MOTION TO DISMISS COUNT I PURSUANT TO FED. R. CIV. P. 12(b)(6)**

### I.   INTRODUCTION

Defendant Aprile's European Restaurant, LLC ("European") submits this Memorandum in support of its Motion to Dismiss Count I, pursuant to Fed. R. Civ. P. 12(b)(6).

Count I of Plaintiff Wayne P. Wyman's ("Wyman") Complaint alleges that European violated the minimum wage requirements of Mass. Gen. Laws. ch. 151, § 1, in connection with Wyman's employment as a bartender and waiter for European by paying him at the "service rate" and applying the "tip credit" to a small amount of set-up and clean-up work time at the beginning and end of Wyman's Sunday brunch work shifts.  Under both Massachusetts and Federal Wage Law, an employer is entitled to pay tipped employees a sub-minimum wage "service rate" and apply a "tip credit," in order to meet the minimum wage requirements for such employees.

Certain tasks performed by tipped employees in a restaurant setting, such as setting tables and work areas and performing clean-up work after shifts, are considered to be incidental to the tip-producing tasks and employers are, as a matter of law, entitled to pay for this time at the

service rate and apply the tip credit in order to meet the minimum wage requirement. Because Count I is solely based on the legally erroneous contention that European was prohibited from paying Wyman the service rate and applying the tip credit to the small amount of set-up/clean-up time worked by Wyman, Count I should be dismiss pursuant to Fed. R. Civ. P. 12(b)(6).

## II.     BACKGROUND

### A.  Factual Background.[1]

European operates a restaurant located at 75 Princeton Street, North Chelmsford, Massachusetts, where Wyman worked as a waiter and bartender. Complaint, ¶ 2,3.  During the busier "dinner" shifts, Wyman was paid at the "service rate" of $2.63 per hour, plus any earned tips.  Complaint, ¶ 4.   During the slower "lunch" shifts, Wyman was paid at a higher "service rate" of $6.50 per hour, plus any earned tips.  Complaint, ¶ 5.

Wyman alleges that, for the first eleven or twelve weeks of his employment, he "worked the Sunday brunch," during which he "typically spent 90 minutes preparing the Restaurant." Complaint, ¶ 6.  Wyman further alleges that he spent approximately one hour after the brunch buffet closed in performing clean-up duties.  Id.  He also alleges that he generally worked shifts every Monday, Wednesday, Thursday, Friday, and Saturday, that amounted to at least 30 hours each week. Complaint, ¶ 9.

### B.  Wyman's Claims

Count I of Wyman's Complaint alleges a violation of the minimum wage requirements set forth in Mass. Gen. Laws. ch. 151, §1.  In Count II, Wyman  alleges a violation of 29 U.S.C. § 207 by failing to pay overtime wages.  Count III alleges that Wyman was terminated as a

---

[1]  Although Defendant vehemently denies many of the allegations contained in the Complaint, the facts will be construed in the light most favorable to Plaintiff pursuant to Fed. R. Civ. P. 12(b)(6).

retaliatory response to Wyman's assertion of his rights under various labor laws.[2]  In its Motion, European only seeks dismissal of Count I at this juncture.

### III.     STANDARD OF REVIEW

To withstand a motion to dismiss, a complaint "must include factual allegations that when taken as true demonstrate a plausible claim to relief even if actual proof of the facts is improbable." George v. Nat'l Water Main Cleaning Co., 2011 WL 841226, *2 (D. Mass. Mar. 7, 2011), citing Bell Atlantic v. Twombly, 550 U.S. 544, 555–558 (2007). While "not equivalent to a probability requirement, the plausibility standard asks for more than a sheer possibility that a European has acted unlawfully." Boroian v. Mueller, 616 F.3d 60, 65 (1st Cir. 2010) (internal quotes omitted).

The "factual allegations must be enough to raise a right to relief above the speculative level." Gorelik v. Costin, 605 F.3d 118, 121 (1st Cir. 2010) (internal quotations omitted).  The Court should not rely upon "bald assertions …or unsubstantiated conclusions" Fantini v. Salem State College, 557 F.3d 22, 26 (1st Cir. 2009).  The Court also must disregard legal conclusions in testing the sufficiency of a complaint.  See Dixon v. Shamrock Financial Corp., 522 F.3d 76, 79 (1st Cir. 2008).

### IV.     ARGUMENT

**A. Tipped Employees Are a Special Class for Wage and Hour Purposes.**

In Massachusetts, wage and hour law is governed by both federal and state statutory schemes. The Fair Labor Standards Act, 29 U.S.C. § 201 et seq. (the "FLSA") is the primary law dealing with wage and hour issues on a national basis, and will preempt any state laws that are in

---

[2] These issues will be addressed in European's forthcoming Answer and Counterclaim, which will demonstrate that Wyman was actually overpaid by having a coworker "punch him out" two hours later than the time he actually worked.  As for his retaliation claim, Wyman was fired for having a physical confrontation with a customer, an incident that was captured on surveillance video.

conflict with the FLSA, or state laws that make it impossible to comply with both the FLSA and state law. 29 U.S.C. § 218 (a); Goodrow v. Lane Bryant, Inc., 432 Mass. 165, 170-1, 732 N.E. 2d 289, 294 (2000). Massachusetts has enacted wage statutes as well and, to the extent that they provide greater protections to employees—such as a higher minimum wage—and are not inconsistent with the FLSA, they are not preempted and employers must comply with them as well."); Goodrow, 432 Mass. 165, 170-1, 732 N.E. 2d 289, 294 (2000). Thus, an employer in Massachusetts must comply with what is at times a web of federal and state wage law.

It is well-settled that much of the Massachusetts wage and hour laws are intended to be identical to the protections afforded by the FLSA, and courts in Massachusetts have generally construed them in such a manner, to be consistent with each other. Swift v. AutoZone, Inc. 441 Mass. 443, 447, 806 N.E. 2d 95, 98 (2004) ("the overtime provisions under State law were intended to be essentially identical to Federal law"); Goodrow, 432 Mass. at 170-1, 732 N.E. 2d at 294 (2000); Cash v. Cycle Craft Company, Inc., 508 F.3d 680, 686 (1st Cir. 2007).

The FLSA and Massachusetts wage law make special provision for payment of the required minimum wage to "tipped employees" such as waiters and bartenders in restaurants.[3] See 29 U.S.C. § 203(m); 29 C.F.R. § 531.59; 455 CMR § 202(2). For employees who make the required monthly minimum in tips, the employer is allowed to pay a less-than-minimum wage hourly rate, and apply tips earned by the employee to make up the difference needed to reach minimum wage. This process is known as taking a "tip credit" and applies equally under state and federal law, although the hourly rates are different due to the fact that Massachusetts requires a higher minimum wage than the FLSA.

---

[3] Massachusetts law also exempts restaurant employees from state law overtime requirements. Mass. Gen. Laws ch. 151, § 1A(14).

Focusing on the more generous Massachusetts law, the minimum wage is $8.00 per hour, and the employer is allowed to pay tipped employees at an hourly rate of $2.63 – known as the "service rate." 455 CMR §202(2). The difference of $5.37 per hour is the maximum "tip credit" that an employer is allowed to take to meet the minimum wage requirement. An employer may only take this credit, however, if the employee actually receives at least $5.37 per hour in tips; if the employee does not receive this amount in tips, the employer must pay the difference, thus assuring that the employee always receives at least minimum wage (and often more when all tips are included). 455 CMR §202(2); 29 C.F.R. § 531.60; see also, Department of Labor Fact Sheet # 15, attached hereto as Exhibit "A."

**B. Count I Must Be Dismissed Because European Has Properly Paid Wyman – A Tipped Employee – for Set-up and Clean-up Time Worked.**

In Count I, Wyman alleges that European failed to comply with Mass. Gen. Laws ch. 151, § 1, because Wyman was paid at the "service rate" for set-up and clean-up time.[4] Wyman does not challenge his status as a tipped employee, nor does he allege that his average hourly rate ever dropped below $8.00 per hour. Thus, on the face of Wyman's Complaint, European has complied with Mass. Gen. Laws ch. 151, § 1 and the applicable Massachusetts regulations. Furthermore, Wyman's position has been rejected by several courts and has been specifically determined to be compliant by Department of Labor regulations implementing the FLSA.

Pursuant to 29 C.F.R. § 531.56(e), an employer may apply the tip credit to an employee's wages for time spent on tasks that are incidental to tasks that are directed towards producing tips. Here, Wyman complains that he had to perform "set up" and "clean-up" work in terms of helping to prepare the dining room in connection with his food service shifts. These types of non-tip producing tasks are considered incidental to tip-producing tasks. Thus, an employer may

---

[4] In fact, at "slower" times during the lunch hour, Plaintiff admits that he earned $6.50 per hour. Complaint, ¶ 5.

still apply the applicable tip credit to this work time, and pay the reduced service rate for it.  See 29 C.F.R. § 531.56(e).  This regulation also provides examples: ". . .the counterman who also prepares his own short orders or who, as part of a group of countermen, takes a turn as a short order cook for the group.  Such related duties in an occupation that is a tipped occupation need not by themselves be directed toward producing tips." 29 C.F.R. § 531.56(e).  This concept is further explained in the Department of Labor Fact Sheet # 15, attached hereto as Exhibit "A": "For example, a waitperson who spends some time cleaning and setting tables, making coffee, and occasionally washing dishes or glasses is considered to be engaged in a tipped occupation even though these duties are not tip producing."  See Ex. A.

The reasoning behind this regulation is clear: "permitting plaintiffs to scrutinize every day minute by minute, attempt to differentiate what qualifies as tipped activity and what does not, and adjust their wage accordingly would create an exception that would threaten to swallow every rule governing (and allowing) for tip credit for employers."  Pellon v. Business Representation Intern., Inc., 528 F. Supp. 2d 1306, 1314 (S.D. Fla. 2007).  Accordingly, simply alleging that he performed some tasks that do not directly produce tips is insufficient, as a matter of law, to state a claim under Mass. Gen. Laws ch. 151, § 1 and, even accepting Wyman's facts as true, he has failed to state a plausible claim that he is entitled to relief.  George, 2011 WL 841226, *2.

As a practical matter, if this Court were to accept Wyman's position, an employer would be forced to actively monitor every hour of every tipped employee's time to determine exactly what type of work he or she was performing.  Thus, if a tipped employee took initiative during a slow hour during a shift (i.e., outside of prime meal times), an employer would be forced to constantly recalculate the employee's hourly rate and make up the difference on a per hour basis

to comply with Mass. Gen. Laws. ch. 151, §1.  This is an impractical and unreasonable position that has been rejected by The Department of Labor and the courts.  See, e.g., Ash v. Sambodromo, LLC, 676 F. Supp. 2d 1360, 1367 (S.D. Fla. 2009) (holding that employer could apply tip credit for waitress that performed set up work and clean-up work that was incidental to her tip-producing duties); Townsend v. BG-Meridian, Inc.., 2005 WL 2978899, *6-7 (W.D. Okla. 2005) (rejecting waitresses argument that she should earn a higher wage for incidental tasks such as taking phone orders or operating the cash register).

Finally, guidance from the Department of Labor's Field Operations Handbook (the "Handbook") also forecloses Wyman's claim.  The Handbook provides a guide to employers by interpreting Federal Wage laws and regulations.  It states that an employer can apply a tip credit towards all of an employee's wages provided that the employee does not spend "a substantial amount of time" on tasks that do not generate tips.  See Handbook, § 30d00(e); also see Fact Sheet # 15 attached hereto as Exhibit "A."  "[S]ubstantial amount of time" is defined as "an excess of 20 percent."   This test has been found to be a reasonable interpretation of the regulation.  Fast v. Applebee's Int'l, Inc., 638 F.3d 872, 880 (8th Cir. 2011) (holding that the Handbook's "twenty percent" test was a "reasonable interpretation of the regulation").

Wyman's Complaint alleges that he spent approximately 2.5 hours each Sunday performing set up and clean-up work on Sundays for his first "11-12" weeks of work.  Given the schedule that Wyman alleges he worked (and that he in fact worked), Wyman's 2.5 hours of set-up/clean-up work time does not, as a matter of law, require European to pay Wyman the full minimum wage. Assuming Wyman worked forty hours per week, Wyman's non-tipped time would, at best, equal approximately six percent of his time; assuming thirty hours of work per week, Wyman's non-tipping tasks would equal just over eight percent of his time; at only 20

hours per week, the 2.5 hours would be a mere 12.5 percent.  Thus, Wyman is far below the twenty percent threshold prescribed by the Department of Labor and European had no duty to pay Wyman at a higher hourly wage during Wyman's non-tipping assignments.  Fast, 638 F.3d at 880 (holding that the Handbook's "twenty percent" test was a "reasonable interpretation of the regulation").

### V.   CONCLUSION

For the foregoing reasons, European respectfully requests that the Court dismiss, with prejudice, Count I of Wyman's Complaint.

        Respectfully submitted,
        APRILE'S EUROPEAN RESTAURANT, LLC
        By its attorneys,


        /s/ Mark J. Ventola
        Mark J. Ventola, Esq. BBO# 549570
        David L. Hansen, Esq. BBO# 670621
        SHEEHAN PHINNEY BASS + GREEN, PA
        255 State Street
        Boston, MA 02109
        (617) 897-5600
        mventola@sheehan.com
        dhansen@sheehan.com


### CERTIFICATE OF SERVICE

I, Mark J. Ventola, do hereby certify that on this 30th day of August, 2012, I served a copy of the foregoing, by first-class mail and electronic mail, upon:

John W. Davis
Davis & Davis, P.C.
77 Franklin Street, 3rd Floor
Boston, MA  02110

- 9 -

/s/ Mark J. Ventola
Mark J. Ventola